*This opinion is subject to revision before final publication in the Pacific Reporter*

**2026 UT 19**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

RMB, INC. and SHAMAN, INC.,
*Petitioners,*

*v.*

CORBIN G. CELOTTO,
*Respondent.*

No. 20250061
Heard December 12, 2025
Filed July 23, 2026[*]

On Certiorari to the Utah Court of Appeals

Third District Court, Salt Lake County
The Honorable Patrick W. Corum
No. 190900552

Attorneys:

Trent J. Waddoups, Salt Lake City, for petitioners

Bryan J. Stoddard, Jonathan P. Barnes, Jr., South Jordan,
for respondent

ASSOCIATE CHIEF JUSTICE POHLMAN authored the opinion of the
Court, in which JUSTICE PETERSEN, JUSTICE NIELSEN,
JUSTICE JORGENSEN, and JUSTICE DENT joined.

Before this case was decided, CHIEF JUSTICE DURRANT recused
himself from this case and JUSTICE HAGEN stepped down from the
court. JUSTICE JORGENSEN and JUSTICE DENT, having reviewed the
briefs and listened to a recording of the oral argument, substituted

---

[*] As of January 31, 2026, "The Supreme Court consists of seven
justices." UTAH CODE § 78A-3-101(1). Pursuant to Utah Supreme
Court Standing Order No. 18, this court sat and rendered judgment
in this matter as a division of five justices.

for CHIEF JUSTICE DURRANT and JUSTICE HAGEN and participated fully in this decision.

———————

ASSOCIATE CHIEF JUSTICE POHLMAN, opinion of the Court:

## INTRODUCTION

¶1    Corbin Celotto was involved in a motor-vehicle crash with another driver. The other driver sued Celotto for negligence and recklessness, alleging that Celotto was intoxicated at the time of the crash. The other driver also sued five bars under Utah's Alcoholic Product Liability Act, UTAH CODE §§ 32B-15-101 to -302 (Dramshop Act or Act), claiming that they allegedly overserved Celotto before the crash. After two of the bars were dismissed from the lawsuit, the other driver settled his claims against Celotto and the three remaining bars.

¶2    But that settlement did not end the litigation. Two of the remaining bars—RMB, Inc. and Shaman, Inc. (collectively, Bars)—sought contribution from Celotto, citing section 32B-15-302(1)(a) of the Dramshop Act, which states that "a person . . . against whom an award is made under this chapter[] may bring a separate cause of action for contribution against any person causing the injury and damage."

¶3    Celotto moved for summary judgment on the contribution claims, arguing that the term "award" in the Dramshop Act's contribution provision does not include amounts voluntarily paid pursuant to a settlement agreement. The district court agreed, granted Celotto's motion, and dismissed the Bars' crossclaims.

¶4    The Bars appealed. The court of appeals affirmed the district court's interpretation of the contribution provision and its grant of summary judgment, concluding that "'award,' as used in section 32B-15-302(1)(a) of the Utah Code, does not extend to voluntary settlements." *RMB Inc. v. Celotto*, 2024 UT App 188, ¶ 16, 562 P.3d 1198.

¶5    We granted the Bars' petition for writ of certiorari, and we affirm the court of appeals. Based on Utah Code section 32B-15-302(1)(a)'s plain language, we conclude that the Dramshop Act does not allow a party to pursue a contribution claim for amounts paid pursuant to a voluntary settlement. We also reject the Bars' arguments that common law principles and policy considerations support a different interpretation.

## BACKGROUND[1]

¶6 After a motor-vehicle crash involving Celotto and another driver, the other driver sued Celotto for negligence and recklessness, alleging that Celotto was intoxicated while speeding and driving on the wrong side of the road. As a result of the crash, the other driver allegedly suffered severe injuries and incurred significant medical expenses and other damages. The two eventually settled their dispute, and the claims against Celotto were dismissed.

¶7 The other driver also sued five bars that allegedly overserved Celotto before the crash, asserting claims under the Dramshop Act. The dramshop claims against two of the five bars were dismissed on summary judgment because the district court concluded there was no evidence that either of the bars served Celotto while he was intoxicated. The remaining three bars reached a settlement with the other driver for a combined $1 million. Pursuant to the parties' agreement, the claims against those three bars were also dismissed, concluding the litigation on each of the other driver's claims.

¶8 But two of the bars who were parties to the settlement, RMB and Shaman, separately asserted crossclaims against Celotto for contribution under Utah Code section 32B-15-302(1)(a). Celotto moved for summary judgment seeking dismissal of the claims, arguing that because the term "award" in section 32B-15-302(1)(a) does not include money voluntarily paid pursuant to a settlement agreement, the Bars were not entitled to contribution under the Act.

¶9 The district court granted Celotto's motion and dismissed the Bars' contribution claims. It concluded that the term "award" in the statute "means something other than a settlement." Because the Bars settled the other driver's claims, the court determined that "no 'award' was made against them" and thus the Bars "do not qualify as a person 'against whom an award is made under this chapter.'" (Quoting UTAH CODE § 32B-15-302(1)(a).)

¶10 The Bars appealed, and the court of appeals affirmed the district court's interpretation of the statute and its grant of

---

[1] "When reviewing a motion for summary judgment, we recite the facts in the light most favorable to the non-moving party." *Magleby Cataxinos & Greenwood, PC v. Schnibbe*, 2024 UT 43, n.1, 562 P.3d 679 (cleaned up).

summary judgment. *RMB Inc. v. Celotto*, 2024 UT App 188, ¶ 16, 562 P.3d 1198. The court of appeals concluded that "'award,' as used in section 32B-15-302(1)(a) of the Utah Code, does not extend to voluntary settlements." *Id.* In reaching this conclusion, the court relied on the "common definition of the word 'award,' the grammatical structure of the contribution provision, and the surrounding statutory language." *Id.* ¶ 10.

¶11 The Bars petitioned for a writ of certiorari, which we granted.

## ISSUE AND STANDARD OF REVIEW

¶12 The Bars contend that the court of appeals erred in concluding that the term "award" in Utah Code section 32B-15-302(1)(a) excludes voluntary settlements. "On certiorari, we review decisions of the Utah Court of Appeals for correctness. We also review questions of statutory interpretation for correctness." *Scott v. Scott*, 2017 UT 66, ¶ 12, 423 P.3d 1275 (cleaned up).

## ANALYSIS

¶13 Utah's Alcoholic Product Liability Act, also known as the Dramshop Act, imposes liability for injuries and damages resulting from the distribution of alcoholic products. *See generally* UTAH CODE §§ 32B-15-101 to -302. The Act contains a contribution provision, which provides that "a person . . . against whom an award is made under this chapter[] may bring a separate cause of action for contribution against any person causing the injury and damage." *Id.* § 32B-15-302(1)(a).

¶14 "When faced with a question of statutory interpretation, our primary goal is to evince the true intent and purpose of the legislature." *Marion Energy, Inc. v. KFJ Ranch P'ship*, 2011 UT 50, ¶ 14, 267 P.3d 863 (cleaned up). And "the best evidence of the legislature's intent is the plain language of the statute itself." *Id.* (cleaned up). Further, we do not read statutory terms or provisions in isolation. *See Armenta v. Unified Fire Auth.*, 2025 UT 26, ¶ 26, 573 P.3d 1283; *Grillone v. Peace Officer Standards & Training Council*, 2025 UT 7, ¶ 36, 567 P.3d 576. Rather, we "examine the statute's plain language in light of the relevant context." *Grillone*, 2025 UT 7, ¶ 36 (cleaned up); *see also* UTAH CODE § 68-3-11 ("Words and phrases are to be construed according to the context and the approved usage of the language . . . .").

¶15 We conclude that Utah Code section 32B-15-302(1)(a) does not allow a party to pursue a contribution claim after that party

voluntarily settles a claim under the Dramshop Act. This conclusion follows from the contribution provision's plain language as understood in context.

¶16 Both parties focus their arguments on the meaning of the term "award" in the Act's contribution provision. The court of appeals likewise cited several dictionary definitions of the term, including a "final judgment or decision," or "something that is conferred or bestowed upon a person." *RMB Inc. v. Celotto*, 2024 UT App 188, ¶ 12, 562 P.3d 1198 (quoting *Award*, WEBSTER'S THIRD NEW INT'L DICTIONARY (2002); *Award*, BLACK'S LAW DICTIONARY (12th ed. 2024)). Although these definitions do not appear to capture a payment a party voluntarily agrees to make as part of a settlement, we acknowledge that in other contexts, appellate courts (including this court) have colloquially referred to an amount paid under a settlement agreement as a "settlement award." *See, e.g.*, *Latham v. Off. of Recovery Servs.*, 2019 UT 51, ¶¶ 8, 13, 448 P.3d 1241 (using "settlement award" to refer to a settlement in a medical malpractice case); *Chester v. Doig*, 842 So. 2d 106, 107 (Fla. 2003) (same); *Buck v. Buck*, 119 N.E.3d 934, 938 (Ohio Ct. App. 2018) (using "settlement award" to refer to a settlement in a personal injury case); *Dunlap v. Dunlap*, 354 S.E.2d 734, 735–37 (N.C. Ct. App. 1987) (same). Thus, if read in isolation, the intended meaning of the term "award" could be unclear.

¶17 But we do not interpret statutory terms in isolation. *See supra* ¶ 14. And for good reason. "Context is a primary determinant of meaning." ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 167 (2012). And a court's failure to consider context can result in interpretive error. *See id.* ("Perhaps no interpretive fault is more common than the failure to follow the whole-text canon, which calls on the judicial interpreter to consider the entire text, in view of its structure and of the physical and logical relation of its many parts."); *State v. Rushton*, 2017 UT 21, ¶ 11, 395 P.3d 92 ("Often, statutory text may not be plain when read in isolation, but may become so in light of its linguistic, structural, and statutory context. The reverse is equally true: words or phrases may appear unambiguous when read in isolation, but become ambiguous when read in context." (cleaned up)).

¶18 The contribution provision states that "a person . . . against whom an award is made under this chapter[] may bring a separate cause of action for contribution against any person causing the

injury and damage." UTAH CODE § 32B-15-302(1)(a). When read in context, the term "award" is not ambiguous and does not include voluntary settlements. That is because a settlement is not an award made *against* a party. As the court of appeals cogently explained, "the 'award' mentioned in the statute is a 'thing' being imposed *on* someone *by* someone with the authority to do so." *RMB*, 2024 UT App 188, ¶ 14.

¶19 As applied here, we see that the Bars were not "person[s] . . . against whom an award [wa]s made." UTAH CODE § 32B-15-302(1)(a). Rather, the Bars voluntarily entered into the settlement agreement with the other driver, and they agreed to pay him an amount in exchange for the dismissal of his claims. Even though the Bars insist that they agreed to settle because *the law* was "against" them, they do not argue that the *settlement amount* was made against them. And that's true even if we were to label the settlement amount an "award."[2]

¶20 The Bars push back against this interpretation on primarily two grounds: common law principles and policy. Neither is persuasive.

¶21 First, the Bars contend that the Dramshop Act incorporates common law contribution principles and that the court of appeals' interpretation of the Act modifies those principles. The Bars' argument misses the mark. To begin, they do not identify with any precision what particular principles they claim were incorporated into the Act. Instead, they suggest that the Act incorporates some version of contribution "rest[ing] on 'overlapping grounds of liability: a varying combination of implied contract, breach of duty, and unjust enrichment.'" (Quoting RESTATEMENT (THIRD) OF

---

[2] In challenging the court of appeals' decision, the Bars argue that the court's holding was premised entirely on the word "award." Not so. The court of appeals provided a detailed explanation of how "the wider context of the statute" and "the words that accompany" the word "award" supported its interpretation. *See RMB*, 2024 UT App 188, ¶¶ 13–15. By not engaging with all of the components of the court of appeals' reasoning, the Bars fail to meet their burden of persuasion on appeal. *See In re A.B.*, 2022 UT 39, ¶ 43, 523 P.3d 168 (explaining that a petitioner fails to satisfy its appellate burden of persuasion when it does not "engage with and respond to the grounds for the court of appeals' decision" (cleaned up)).

RESTITUTION & UNJUST ENRICHMENT § 23 cmt. a (A.L.I. 2011).) But they never settle on the principles they claim the legislature adopted. The closest they come is with their argument that the "common law does not limit contribution actions in the manner represented by the version of 'award' discussed by the court of appeals." (Citing 18 C.J.S. *Contribution* § 4 (2026).) And even then, they don't actually explain what the common law understanding of contribution is, and they don't show that their interpretation of it was recognized in Utah. Without these foundational showings, we cannot conclude that the court of appeals' interpretation of the contribution provision displaces any particular common law principle in contravention of legislative intent.

¶22 Second, at oral argument, the Bars asserted that the legislature could not have intended to limit contribution claims to only those cases that result in a decision on the merits by a judge, jury, or arbitrator, because most cases under the Act settle. This argument is both untimely and unconvincing. It appears that the Bars were attempting to invoke the absurdity doctrine, but if so, they failed to properly invoke that doctrine in their brief. *See Porenta v. Porenta*, 2017 UT 78, ¶ 33, 416 P.3d 487 ("We do not address issues raised for the first time during oral argument."); *Allen v. Friel*, 2008 UT 56, ¶ 8, 194 P.3d 903 ("It is well settled that issues . . . that were not presented in the opening brief are considered waived and will not be considered by the appellate court." (cleaned up)).

¶23 Further, even had this policy-based argument been timely made, it would fail because the Bars have not shown that no rational legislator could have intended to exclude settlements from the contribution provision. The absurdity doctrine is "a narrow, exacting standard," which this court does not apply "unless the operation of the plain language is so overwhelmingly absurd that no rational legislator could have intended the statute to operate in such a manner." *Bagley v. Bagley*, 2016 UT 48, ¶ 28, 387 P.3d 1000 (cleaned up). Here, the Act presents a unique framework under which the legislature has imposed a form of strict liability for injury and damage on distributors of alcoholic products. *See generally* UTAH CODE § 32B-15-201; *see also Red Flame, Inc. v. Martinez*, 2000 UT 22, ¶ 10, 996 P.2d 540 (describing the Dramshop Act as "prescrib[ing] a form of strict liability rather than traditional negligence"). Under this framework, a legislator reasonably could have intended to allow for contribution only where an award is

forced upon a party and not where a party voluntarily settles a claim.

¶24 Ultimately, the legislature employed language in the contribution provision that reflects its policy choice to allow for contribution only when an award has been made against a party. No award was made against the Bars in this case, so the provision does not apply.

## CONCLUSION

¶25 When read in context, the term "award" as used in Utah Code section 32B-15-302(1)(a) does not include voluntary settlements. Because the Bars settled the claims against them, they cannot pursue a contribution crossclaim against Celotto. Affirmed.

―――――――